UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA C. LANCASTER, | ) |
| | ) |
| **PLAINTIFF**, | ) |
| | ) |
| vs. | ) CASE NO. 07-CV-516-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| **DEFENDANT**. | ) |

## OPINION AND ORDER

Plaintiff, Joshua C. Lancaster, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's September 2, 2004 application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before Administrative Law Judge Say (ALJ) was held January 26, 2006. A second hearing was held before ALJ McClain on October 6, 2006. By decision dated December 7, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on July 17, 2007. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 22 years old at the time of the second hearing. [R. 312]. He claims to have been unable to work since September 25, 2003, due to chronic back, shoulder, neck and hip pain, peripheral neuropathy in his legs and side effects from his medication. [R. 286-288, 312-318]. The ALJ determined that Plaintiff has severe impairments consisting of status post lumbar spine surgery and cervical spine disease. [R. 20].[2] Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to occasionally lift and/or carry 10 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk (with normal breaks) at least 2 hours in an 8-hour workday and sit (with normal breaks) about 6 hours in an 8-hour workday and only occasionally stoop and bend. [R.21]. Based upon the testimony of a Vocational Expert (VE), the ALJ determined that Plaintiff's RFC does not prevent his return to his past relevant work (PRW) as a food orderer. [R. 23]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005)

---

[2] A portion of the second page of the ALJ's written decision which appears in the Administrative Record at R. 19, is blurred and blocked out. However, a copy of the ALJ's decision containing the missing portion was attached as Exhibit A to Plaintiff's Complaint [Dkt. 2, pgs. 5 through 11], which the Court has utilized for purposes of its review in this case. All citations to the ALJ's decision in this Opinion and Order are by the page numbers of the Administrative Record. [R. 18-24].

(describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed to properly consider the opinions of his treating physicians. The Court agrees and finds this case must be reversed and remanded to the Commissioner for reconsideration of the medical evidence.

## Discussion

Plaintiff's medical treatment history is faithfully recounted in Plaintiff's briefs and does not need to be repeated in detail by the Court in this Opinion and Order. Generally, Plaintiff underwent an L4-L5 discectomy while he was a teenager at the Shriners Hospital for Children in Chicago, Illinois. [R. 154].[3] By all accounts, the surgery was successful and Plaintiff was gainfully employed until he was involved in a motor vehicle accident on September 25, 2003. [R. 283, 229-234]. He commenced treatment on September 30, 2003, by Gary R. Lee, M.D., for neck and back pain with paresthesias[4] and continued treatment with Dr. Lee and a chiropractor until January 2004, when Dr. Lee reported improvement in Plaintiff's symptomatology and released him from care. [R. 126-129, 130-132, 139-150]. Plaintiff's complaints continued and he was treated by David A. Traub, M.D., James C. Mayoza, M.D., an orthopaedic specialist, and was seen again at Shriners' Children's Hospital. Plaintiff returned to the care of Dr. Lee and his physician's assistant in May 2005 and was still being treated by Dr. Lee through at least February 16, 2006. [R. 201-226, 246-248]. Plaintiff was also

---

[3] Discectomy, also called diskectomy, is excision of an intervertebral disk. *See* Dorland's Ill. Medical Dictionary (Dorland's), 28th ed (1994) 492.

[4] Paresthesia is an abnormal touch sensation, such as burning, prickling or formication, often in the absence of an external stimulus. Dorland's at 1234.

treated by Christy Mayfield, M.D., from April 5, 2006 through October 2006. [R. 249-265].

At issue in this case are the Medical Source Statements of Ability to Do Work-Related Activities (Medical Statements) submitted by Dr. Lee and Dr. Mayfield which Plaintiff claims the ALJ failed to properly consider. [R. 246-248, 263-265].

Dr. Lee's Medical Statement, dated February 16, 2006, contains the following exertional limitations and handwritten comments:

> Lifting/Carrying less than 10 pounds: "He has severe low back pain and cannot do any bending to lift things, he can carry 2-5 pounds short distances"
>
> Standing and/or Walking less than 2 hours in an 8-hour workday: "He has to lay down 2-3 times a day 20 minutes at a time sometimes up to 1-2 hrs."
>
> Sitting less than about 6 hours in an 8-hour workday; Must periodically alternate sitting and standing to relieve pain or discomfort: "He can sit for 30-45 min maximum at a time"
>
> Pushing and/or Pulling limited in upper and lower extremities: "> 5 pounds or less" "less than 20 minutes at a time"
>
> Clinical findings: "Low back surgery. Lumbar disc abnormalities ↓ sensation L4-S1 distribution ⊕ st leg raises Severe debilitating pain require routine narcotic meds."
>
> Postural limitations:
> Never: Climbing, Balancing, Kneeling, Crouching, Crawling
>
> Manipulative limitations: Limited in reaching all directions (including overhead) and handling (gross manipulations); Unlimited in fingering (fine manipulation) and feeling (skin receptors): "He has increased back pain [with] #1 & 2"
>
> Visual/Communicative limitations: "Affected by medications. He takes Methadone 20 mg 4 times a day"

4

[R. 246-248].

Dr. Mayfield's medical statement, dated October 5, 2006, sets forth the following limitations:

> Total at one time: Sit 10-30 minutes; Stand 10-30 minutes; Walk 10-30 minutes
>
> Total during entire 8-hour day: Sit 1 hour; Stand 1 hour; Walk 1 hour
>
> Patient can never lift/carry: up to 5 lbs [all weight categories]
>
> No: limitations in use of feet or repetitive movements, as in pushing and pulling leg controls
>
> Yes: limitations in use of hands for repetitive movement and in fingering
>
> Never: bend, squat, crawl, climb, reach
>
> Total restriction of activities involving unprotected heights
>
> Marked restriction of activities involving being around moving machinery, driving, vibrations
>
> No restriction of activities involving exposure to marked changes in temperatures and humidity, dust, fumes and gases
>
> Objective findings: "Severe degenerative disc disease etc. with severe pain and requiring cane for ambulation"
>
> MRI [with] degenerative lumbar disc disease

[R. 263-265].

The ALJ acknowledged these statements but declined to give them controlling weight because:

> ... their opinions lack support and are inconsistent with the record of the examinations they conducted as well as with the record as a whole. Their exams show no major

5

>orthopedic or neurological problems. In addition, parts of the record show the claimant's condition to be not as severe as he alleges.

[R. 23].

With regard to Dr. Lee's statement, the ALJ found an inconsistency between those findings and another doctor's note on January 19, 2006, that an MRI of Plaintiff's lower back was "not that bad." [R. 22]. That notation was made by Charles S. O'Leary, presumably a member of Dr. Lee's clinic, who saw Plaintiff when he came in to get early refills on his Methadone.[5] [R. 201]. Upon examination, Dr. O'Leary noted Plaintiff had pain to palpation of the posterior cervical spine, thoracic spine and lumbar spine and decreased range of motion throughout. [R. 202]. Because Plaintiff claimed he had more neck and thoracic spine problems, MRIs of the neck and thoracic spine were ordered. [R. 201-203]. Although Dr. O'Leary did deny Plaintiff an early refill of Methadone for two weeks, he did not find Plaintiff's low back pain was not severe. In fact, he wrote that he had persuaded Plaintiff to see a chronic pain specialist and to have a surgical referral for his problems. [R. 201, 203].

The ALJ's comment: "Except for his claims of back pain, the examination and his gait and station were normal" amounts to substitution of a lay opinion for that of a medical professional, which the ALJ may not do. [R. 22]. That comment does not appear in Dr. O'Leary's notes. *See McGoffin v.Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ may reject treating physician opinion only on the basis of contradictory medical

---

[5] Methadone is a synthetic narcotic analgesic with multiple actions quantitatively similar to those of morphine and is used for detoxification treatment of narcotic addition and for maintenance treatment of narcotic addiction in conjunction with appropriate social and medical services. PDR 53rd ed. 2754.

evidence and not due to his or her own credibility judgments, speculation or lay opinion); Sisco *v. U.S. Dep't of Health & Human Servs.,* 10 F.3d 739, 744 (10th Cir.1993) (ALJ's finding legally flawed because ALJ cannot substitute his/her lay opinion for that of a medical professional). Dr. O'Leary's note does not reflect an opinion regarding Plaintiff's functional abilities that contradicts Dr. Lee's assessment of Plaintiff's limitations.

The ALJ cited Dr. Lee's earlier remarks "on Mr. Lancaster's normal examination" as evidence that contradicts the findings set forth in Dr. Lee's Medical Statement. [R. 22]. That note, dated May 20, 2005, indicated Plaintiff's cervical and thoracic spine examinations reflected normal range of motion and no tenderness, spasm, scoliosis or rigidity. [R. 219].[6] However, with regard to Plaintiff's lumbar spine, the examination results were: "Remarkable for tenderness and diminished range of motion." *Id.* Because of Plaintiff's complaints of continuing pain, Dr. Lee ordered a repeat MRI scan of the low back and a new surgery consultation. [R. 218]. The cited notation does not constitute substantial evidence that conflicts with Dr. Lee's Medical Statement regarding functional limitations imposed by Plaintiff's low back impairment.

The ALJ concluded that the record contained "no intervening documentation to support the presented abrupt decline in Plaintiff's capacity." Presumably, the ALJ was referring to the time period between what he had characterized as Dr. Lee's "normal" findings in May 2005 and the opinion expressed on his Medical Statement in January 2006. [R. 22]. As stated above, Dr. Lee had not recorded "normal" results while examining Plaintiff's low back. Nonetheless, even if the ALJ's reasoning were applied

---

[6] This was before Plaintiff's October 31, 2005 motor vehicle accident.

7

to just the "normal" cervical and thoracic findings by Dr. Lee in May 2005, such a conclusion is unfounded. After the October 31, 2005 accident, Dr. Lee's examination notes on November 28, 2005, record back, neck, shoulder and hip pain as well as headaches and tenderness and stiffness. [R. 204]. The cervical MRI ordered by Dr. O'Leary in January 2006 revealed mild disc bulging in C5/6; the thoracic MRI was negative. [R. 224]. Compared to the normal cervical and thoracic MRIs which had been conducted in June 2004, the MRI offers objective evidence to support a "decline in Plaintiff's capacity." [R. 228]. Additionally, Dr. Mayfield, the pain specialist to whom Dr. O'Leary referred Plaintiff, found range of motion decreased, movements painful and tenderness of the paraspinal and trapezius muscles on April 5, 2006. [R. 261-262]. She diagnosed degeneration of cervical intervertebral disc as well as degeneration of lumbar or lumbosacral intervertebral disc. *Id.*

As to Plaintiff's lower back complaints, the November 10, 2005, MRI of the lumbar spine was compared with a prior MRI conducted on April 21, 2004, and revealed foraminal narrowing had recurred in the interim. [R. 226]. Dr. Lee was copied on all these MRI reports. *Id.* None of the reasons given by the ALJ for discounting Dr. Lee's Medical Statement are supported by the record.

With regard to Dr. Mayfield's Medical Statement, the ALJ said:

> "Mr. Lancaster made few visits to Dr. Mayfield. There are also no orthopedic or neurological studies done by her on June 28, 2006. There are no records of any examinations done during claimant appointments on May 19-20, 2006. Other examining deficiencies are evident during the visits in April 2006.

[R. 22-23]. These reasons also are not borne out by the record.

The frequency of examination is a factor the ALJ is entitled to consider in ascertaining the treating relationship between physician and patient. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, the ALJ's recitation of Dr. Mayfield's treatment record is incomplete. Dr. Mayfield referred to her physical examination findings in her April 5, 2006, April 22, 2006, and July 1, 2006 notations and she referred to Plaintiff's MRIs in her Medical Statement. [R. 250, 259, 261, 265]. The ALJ did not identify what he found were "other examining deficiencies" in Dr. Mayfield's treatment records. [R. 23]. Nor is there any suggestion that he attempted to recontact Dr. Mayfield to clarify the basis for her opinion. In a circumstance such as this, the ALJ is required to recontact the treating physician to obtain more information before rejecting her opinion outright. *See* 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); *see also McGoffin,* 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question).

The Court finds the ALJ failed to properly consider the opinions of Plaintiff's treating physicians. *See* 20 C.F.R. § 404.1527(d)(2); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (ALJ must give treating physician opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic technique and is consistent with the other substantial evidence in the record); *see also*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cr. 2003) (ALJ must give good reasons for weight accorded opinions of treating physicians).

In addition, the ALJ did not explain how he weighed other probative medical evidence in the record. Medical reports from the Shriner's Children's Hospital show Plaintiff had a positive diskogram and was considered a candidate for a two-level posterior stabilization and TLIF procedure and was placed on the surgery waiting list in September 2004. [R. 152-154]. James C. Mayoza, M.D., reported on August 26, 2004, on Plaintiff's diskogram results and opined that lumbar spine surgery is necessary or "he will not improve." [R. 169-170]. Remand is required for the ALJ to incorporate his evaluation of this medical evidence into his decision. The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. § 404.1527(d), and to "consider all relevant medical evidence of record in reaching a conclusion as to disability." *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989). Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, the Court cannot determine whether his conclusions are supported by substantial evidence. "[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand." *Id.*

## Conclusion

The ALJ did not properly consider the medical evidence in the record in this case. Therefore, the Court cannot say that the record contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration.

Dated this 25th day of September, 2008.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE